IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
(BROWNSVILLE DIVISION)

United States District Court
Southern District of Texas
FILED

NOV 0 9 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| BEATRIZ E. EBEL, | § | |
| Individually and as | § | |
| Personal Representative of the | § | |
| Estate of PHILIP WAYNE EBEL, | § | |
| Deceased, | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. No. B-03-102 |
| | § | |
| GLAXO SMITHKLINE, and | § | |
| ELI LILLY & COMPANY | § | |
|     Defendants. | § | JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

NOW COMES, Beatriz E. Ebel, individually and as personal representative of the Estate of Philip Wayne Ebel, deceased, and, with the approval of the Court or written consent of the Defendant Glaxo SmithKline, in accordance with Rule 15(a), Fed.R.Civ.P., files this Amended Complaint, which adds the codefendant Eli Lilly & Company. Suit is brought complaining about the personal injuries to and wrongful death of Philip Wayne Ebel, deceased.

### Nature of the Case

1.  This is a Texas diversity, products liability, personal injury and wrongful death case arising out of the tragic death of Philip Wayne Ebel on or about November 11, 2002, in Brownsville, Texas. At the time of his death Mr. Ebel was under the

influence of two powerful, psychotropic drugs, manufactured and marketed by the Defendants.

## Parties

2. Plaintiff Beatriz E. Ebel is the widow of Philip Wayne Ebel. She is a resident of Brownsville, Texas. Thus, she is a statutory beneficiary of the cause of action created by the Texas Wrongful Death Act, and an appropriate party to allege claims on behalf of the Estate of Philip Wayne Ebel under the Texas Survival statute. She brings this suit in her own capacity and her representative capacity to recover damages for herself and for all other statutory beneficiaries of this cause of action, including, of course, Philip's two children, Eric Fernando Ebel and Gabriela Nicole Ebel.

3. Defendant Glaxo SmithKline [hereinafter GSK] is a British owned and controlled pharmaceutical company with dual American headquarters in Pennsylvania and North Carolina. It manufacturers and markets a serotonergic, psychoactive medication called Paxil, which is in the same SSRI class of drugs as Eli Lilly's flagship drug, "Prozac".

4. Defendant Eli Lilly and Company is an Indiana corporation with headquarters in Indianapolis, Indiana. It is a pharmaceutical company which, among other things, develops and markets psychoactive drugs, including Prozac and a powerful "atypical" anti-psychotic drug called OLANZAPINE, which it markets under the trade names "Zyprexa" and "Symbyax".

## Jurisdiction and Venue

5. Jurisdiction is based on diversity of citizenship. 28 U.S.C. §1332. The amount in controversy is substantially in excess of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. The actions giving rise to this cause of action happened within this District. Therefore, venue is permissible in this District pursuant to 28 U.S.C. §1391.

## Facts

It has become necessary to file this suit as a result of the following facts.

### Suicidality Related to Prozac, Paxil and Other SSRI Drugs

6. Paxil is a powerful, mind altering drug which is specifically designed and marketed to alter a person's serotonin system. For years it has been known that serotonin functioning is directly related to aggression and violence, both directed at oneself and at others. Although Paxil may help the majority of patients who take it, there is a "small vulnerable subpopulation" of patients who are at an increased risk of violence and suicide as a result of taking Paxil and other SSRI drugs.

7. GSK has known about this small vulnerable subpopulation for years. Indeed, one of the ways that it learned about this risk was when it hired a former Lilly employee who had been directly involved with the Prozac/suicidality controversy in the early 1990's. Despite its knowledge of the problem, GSK has failed to conduct

any prospective tests to determine the frequency of this phenomenon or to develop means of identifying and protecting those patients who are in this risk group.

8. On October 15, 2004, the FDA issued a statement indicating (a) that Prozac, Paxil and the other SSRI drugs do cause increased suicidality in the pediatric and adolescent population, and (b) that it would require BLACK BOX WARNINGS about this risk.

9. In the only case which has gone to trial on the issue of Paxil-induced homicidality and suicidality, GSK was adjudicated as being responsible for four wrongful deaths. *Tobin v. SmithKline Beecham Pharmaceuticals*, 164 F.Supp.2d 1278, 1284 (D.Wy. 2001).

## Zyprexa, Akathisia & Suicidality

10. Zyprexa is Eli Lilly's brand name for a powerful, mind altering drug, the chemical name of which is OLANZAPINE. It is in the class of drugs commonly known as "psychotropics". Lilly markets Zyprexa for the treatment of schizophrenia, bipolar disorders, and, ironically enough, in an injectable formula for the treatment of "agitation" associated with these disorders.

11. The irony lies in the fact that, in actuality, for some patients, Zyprexa causes extremely troubling "agitation". Specifically, its side effects include both insomnia and other sleep disturbances and a pernicious neurological condition known

as "akathisia". For example, in its clinical trials of OLANZAPINE for the treatment of schizophrenia, the incidence of treatment emergent akathisia on this drug was 5%, as compared to only 1% on placebo.

12.     The actual number and rate of completed suicides for patients in clinical trials on antipsychotic drugs, as submitted to the FDA, is higher on OLANZAPINE than on any of the other drugs in this class. Specifically, Lilly reported that, of 2500 patients on Zyprexa, there were 12 completed suicides, as compared to none on placebo. However, despite its recent avowed intention of making all of its adverse event clinical trial data available to the public, to date Lilly has refused to divulge information about non-fatal suicidal acts of patients on Zyprexa.

13.     Both sleep disturbances and akathisia are precursors of suicide. Lilly has been well aware for many years that insomnia and drug induced akathisia can trigger suicide, because its flagship drug, Prozac, also triggers these side effects, and, thereby, triggers suicidality in some patients. Indeed, the relationship between akathisia and suicidality is so well known and generally accepted that it is even incorporated into the DSM-IV-TR, §333.99.

14.     Although Lilly has adamantly denied that Prozac causes suicidality in any group of patients, on October 15, 2004, the FDA issued a statement acknowledging the causal link between Prozac and other similar antidepressant

medications on the one hand and increased suicidality in the pediatric and adolescent patient population on the other. Moreover, the FDA has now mandated

### BLACK BOX WARNINGS

regarding this increased risk, i.e. something that Lilly should have voluntarily pursued years ago.

15. On information and belief it is alleged that, notwithstanding its knowledge of the potential risk of Zyprexa induced suicidality, Lilly has failed to conduct any prospective tests to determine the frequency of this phenomenon or to develop means of identifying and protecting those patients who are at risk. It has also failed adequately to warn prescribing physicians, pharmacists, and patients about this risk or to instruct them on the known ways to reduce or ameliorate the risk.

16. Lilly has not only promoted, but also actually over-promoted Zyprexa. It has achieved great financial success in doing so. Zyprexa is now Lilly's #1 selling drug. Indeed, it has even surpassed Prozac in annual earnings for Lilly, garnering 34% of Lilly's $12.6 billion in sales in calendar year 2003.

17. On information and belief, Lilly has failed to implement warnings about the increased risk of suicide with Zyprexa because of its concern that warnings would hurt sales. A public acknowledgment of the link between Zyprexa and suicidality could threaten, not only Lilly's profits from Zyprexa, but, indeed, the very viability

of the company. By way of illustration, Plaintiff would show the Court and Jury that, on February 7, 1990, when word of Prozac's potential to trigger suicidality was first hitting the reputable professional journals, Lilly's top scientist wrote that this link could cause Lilly itself to "go down the tubes". Lilly's top management responded to that risk by establishing, as its "#1 priority" the goal to "PROTECT PROZAC".

18. History is repeating itself. Obviously, now, Lilly's #1 goal is to "protect" its new, multi-billion dollar a year pill. To do so, it is employing the same stratagems that worked so well for it with regard to Prozac, i.e. (a) denying the association between Zyprexa and suicide, (b) refusing to warn about this risk, (c) blaming the deaths on the "disease" and the publicity on trial lawyers, the media, and others.

19. This pattern of behavior demonstrates a reprehensible tendency to vaunt profits over patient safety. To curb such irresponsible behavior, Lilly should be held fully accountable for all damages provided by law, including exemplary damages as authorized by the Texas Constitution and statutory law.

### The Tragic, Untimely and Wrongful Death of Philip Ebel

20. Philip Wayne Ebel was born on November 19, 1964 in LaGrange, Texas. He met and married Beatriz E. Ciseneros. Before his death on November 11, 2002,

they had been married for 14 years. He considered his wife to be his best friend. Philip and Bea had two children, Eric Fernando Ebel and Gabriela Nicole Ebel.

21.   Over the years, Mr. Ebel had problems with chronic tension headaches. He sought and received extensive medical treatment for this condition. Unfortunately, the severity of it was such that he ultimate became disabled from his regular job.   However, Mr. Ebel was an exceedingly smart and highly motivated man.  Therefore, he and his family moved to the Valley and, in the months preceding his death, he was pursuing a significant new business opportunity.

22.   Needless to say, the headaches, and the associated disability, triggered concomitant, associated depression.  However, despite his physical pain and his depression, Philip was never violent or suicidal.  His physicians tried a number of different medications to treat both the headaches and the depression.  One of these, which was begun shortly after Philip's July 2002 appointment with his physician, was Zyprexa.   In the wake of taking Zyprexa, Mr. Ebel developed akathisia.   This, obviously, put him at risk of suicide.

23. That risk was subsequently exacerbated when, on November 9, 2002, he was put on Paxil[1], an "SSRI" drug in the same class as Lilly's Prozac.  Two days

---

[1]   Plaintiff believes that GlaxoSmithKline, the maker of Paxil, and Lilly, are joint tortfeasors and that both drugs, i.e. Paxil and Zyprexa, are proximate causes of the death of her husband.   Indeed, Plaintiff previously filed suit against GSK, in this Court, under Civil Action No. B-03-102.   That matter has now been amicably settled.   Lilly may, or may not, be entitled

later, on the afternoon of November 11, 2002, Mr. Ebel drove to Academy, bought a shotgun, parked around the corner and then killed himself. Everyone that knew him knows that, in his right and normal mind, he could never have done this.

24. Both Paxil and Zyprexa were proximate causes of Philip Ebel's death. They caused it by triggering akathisia and sleep disturbances, known risk factors for suicide. On information and belief, Philip's death was also caused by a drug-drug interaction between Zyprexa and Paxil. Defendants' tortious conduct was also a proximate cause of Mr. Ebel's death.

### The Perils of Polypharmacy

25. Polypharmacy, i.e. the multiple prescription of several different psychoactive drugs – sometimes known as a drug "cocktail" – is a significant problem in today's world of medicine. It is problem enough when the prescribing physician is a skilled psychiatrist who has studied psychoactive drugs and who tries to remain current in his knowledge about them. It is even more problematic when, as here, the Zyprexa is prescribed by a primary care physician.

26. Lilly knows about the potential risks of polypharmacy. By way of example, Plaintiff would show that since May 1990, the Prozac label has carried a "contraindication", warning physicians against putting patients on Prozac and a

---

to contribution credits as a result of that settlement.

-9-

MAOI at the same time. The reason is that this combination of drugs causes or exacerbates various "activation" types of side effects, including a constellation of symptoms branded as "neuroleptic malignant syndrome" and akathisia.

27.    One would hope that Lilly would have realized the potentially synergistic effects about combining Zyprexa with an SSRI like Paxil, and would have put a similar contraindication or warning on the label. Or, at the very minimum, some instructions for the safe coadministration of multiple psychoactive drugs. However, to the contrary, instead of discouraging the concomitant use of these two powerful psychoactive medications, Lilly has actually encouraged such practices in several ways, including (a) promoting "combination" therapy of Zyprexa with other psychoactive drugs, and, now, even (b) designing its own "combination" capsule which contains both Prozac and Zyprexa and marketing this dual-drug pill under the brand name Symbyax for the treatment of bipolar depression.

### Legal Theories and Causes of Action

28.    Defendants are liable under one or more of three different theories of liability recognized under Texas law. FIRST: Defendants are strictly liable under the principles of Restatement (Second) of Torts, §§402A and 402B, and the new Restatement (Third) of Torts, for product defects and misrepresentations.

29. SECOND: Defendants conduct is unreasonable, or negligent, and was a proximate cause of Philip Wayne Ebel's death. The negligence includes failure to warn, failure to test, failure to implement appropriate patient screening mechanisms, and over-promotion.

30. THIRD: Defendants are liable under a breach of warranty theory.

### **Damages and Remedies**

31. Plaintiff sues under the Texas Survival Statute to recover personal injury damages on behalf of Philip Ebel from the time of his initial ingestion of Zyprexa until his death. Plaintiff also sues under the Texas Wrongful Death Act for wrongful death damages on behalf of all statutory beneficiaries of that cause of action. The amount of actual damages is alleged to be in the millions, and the *ad damnum* will be particularized on request.

32. As noted above, there is clear and convincing evidence of the Defendant Lilly's "gross negligence", as that term is defined in the Texas Civil Practice & Remedies Code., as follows:

> "Gross negligence" means an act or omission:
>
>> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

>   (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Consequently, Lilly should also be liable in this case for exemplary damages. Lilly gets no credit against such damages for any pretrial settlement with its codefendant.

33. Moreover, because of Mr. Ebel's disability, in accordance with subsection (c) of section 41.008, Tex.Civ.Pract. & Rem. Code, the limitations of subsection (b) of that section do not apply. (Note: Lilly is not a "health care provider" and selling Zyprexa is not providing "health care" as those terms are defined by section 74.001).

34. Plaintiff is also entitled to recover prejudgment interest and costs of court.

### Jury Demand

35. Plaintiff hereby invokes her right to trial by jury.

WHEREFORE, Plaintiff prays that the Defendants GSK and Eli Lilly & Company be cited to appear and answer herein, and that, after a trial, she receive such monetary damages and other relief as is sought herein and appropriate under the law and the facts.

Respectfully submitted,

/s/ Andy Vickery

Andy Vickery
Texas State Bar No. 20571800
VICKERY & WALDNER, LLP
One Riverway, Suite 1150
Houston, Texas 77056
Telephone: 713-526-1100
Facsimile: 713-523-5939
Email: *andy@justiceseekers.com*
Lead Counsel for Plaintiff

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing pleading has been served upon the following counsel of record on November 8, 2004:

Michael R. Cowen
LAW OFFICES OF MICHAEL R. COWEN, P.C.
520 E. Levee Street
Brownsville, TX 78520

Jaime A. Saenz
RODRIGUEZ COLVIN & CHANEY, L.L.P.
P. O. Box 2155
1201 East Van Buren
Brownsville, TX 78522-2155

Andrew T. Bayman
KING & SPALDING, LLP
191 Peachtree Street
Atlanta, GA 30303

A courtesy copy, along with the notice required by Rule 4, has also been served upon in-house counsel for Eli Lilly & Company.

_____
Andy Vickery